IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
MIDDLE DIVISION

| | |
|---|---|
| **CHRISTOPHER ZIMMER** *Plaintiff,* v. **CITY OF MURFREESBORO, JONATHAN FENOY, JOSEPH ROCKETT, and GEORGIALEE HANKS** *Defendants.* | Case No. |

## COMPLAINT

Comes now the Plaintiff, CHRISTOPHER ZIMMER, by undersigned counsel and for his complaint against the Defendants states the following:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1331 with this Complaint arising under a violation of rights conferred by the Constitution of the United States of America.

2. Jurisdiction of this Court is invoked under 28 U.S.C. § 1343(a)(3) because this action seeks redress for a deprivation, under color of state law, of rights secured to Plaintiff by the Fourth Amendment to the Constitution of the United States of America.

3. Plaintiff asserts claims for relief under 42 U.S.C. § 1983, which authorizes action to redress the deprivation, under color of state law, of rights, privileges, or immunities secured to Plaintiff by the Constitution or laws of the United States of America and 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs

to prevailing plaintiffs in actions brought under 42 U.S.C. § 1983.

4. Each of Plaintiff's claims arise under the Fourth Amendment to the United States Constitution, made applicable to the states and state actors through the Fourteenth Amendment to the United States Constitution.

5. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because one or more defendants reside in this judicial district. Additionally, a substantial part of the events or omissions giving rise to this claim occurred within this judicial district.

**PARTIES**

6. Plaintiff Christopher Zimmer is an adult resident of Davidson County, Tennessee.

7. Defendant City of Murfreesboro is a municipal government entity organized under the laws of the State of Tennessee and is the employer of Defendants Fenoy, Rockett, and Hanks.

8. Defendant Jonathan Fenoy is an officer of the City of Murfreesboro Police Department. He is sued in his individual capacity.

9. Defendant Joseph Rockett is an officer of the City of Murfreesboro Police Department. He is sued in his individual capacity.

10. Defendant Georgialee Hanks is an officer of the City of Murfreesboro Police Department. She is sued in her individual capacity.

**FACTUAL ALLEGATIONS**

11. Plaintiff Christopher Zimmer is a 34-year-old agriculture business professional with a bachelor's degree in Agricultural Business and Management from

Middle Tennessee State University.

12. Plaintiff Zimmer sustained a traumatic brain injury on January 25, 2004 which caused several neurologic problems, including severe posttraumatic arm tremor. The traumatic brain injury caused damage to both frontal lobes and cause him to suffer from psychological symptoms including impulsivity and impaired judgment.

13. On June 26, 2024, Officers Joseph Rockett, Jonathan Fenoy, and Georgialee Hanks were dispatched to the United States Department of Agriculture offices at 315 John R. Rice Boulevard in Murfreesboro, Tennessee.

14. The officers were dispatched to assist and standby for Plaintiff Zimmer's employment termination by request from his employer.

15. Dispatch also noted that Plaintiff Zimmer had an outstanding arrest warrant based on violation of probation for DUI.

16. Dispatch also informed Officer Fenoy that Plaintiff Zimmer had a history of mental health issues and a history of assaultive behaviors toward police officers.

17. Defendants Rockett, Fenoy, and Hanks interpreted the dispatcher's statement regarding Plaintiff Zimmer's mental health history to mean that Plaintiff Zimmer was "someone who suffers from psychological, mental, or emotional diagnosis that requires treatment or medication."

18. Instead of making accommodations or modifications to their usual approach, Defendants Rockett, Fenoy, and Hanks decided to employ a forceful, violent approach against Plaintiff Zimmer because of his mental health condition.

19. At approximately 3:13 p.m., Officers Rockett and Fenoy positioned

themselves in a hallway adjacent to the room where Plaintiff Zimmer was seated.

20. At 3:16:01 p.m., while waiting for Zimmer, Officer Rockett told Officer Fenoy, since Plaintiff Zimmer is flagged as violent, "I'm just going to hook him."

21. At 3:16:44 p.m., after being informed by Mr. Hancock that Plaintiff Zimmer was not expected to act out, Officer Rockett replied, "He is violent, apparently. So, we are not taking any fucking chances."

22. At 3:19:56 p.m., Officer Fenoy escalated the rhetoric, stating to Officer Rockett, "We will have to drop elbows on somebody." Another officer responded, "Going to fight." Officer Fenoy replied, "I have 50 bucks on us." Officer Rockett replied, "Oh yeah."

23. At 3:20:06 p.m., Officer Fenoy stated, "I'm going to make him throw up."

24. At 3:20:14 p.m., Officer Rockett said "Come on, come on. Do us a favor, guy. Rile him like a bull in a cage."

25. At 3:21:49 p.m., Officer Rockett told Officer Hanks, "Let's just go and put him in cuffs. He's got a fucking warrant. Fuck him."

26. Officer Hanks responded in agreement with Rockett and Fenoy's stated plan to "hook," "fight," and "fuck," Plaintiff Zimmer and make him "throw up."

27. At 3:23:02 p.m., Officers Rockett and Fenoy entered the office where Zimmer sat calmly and unarmed.

28. Plaintiff Zimmer neither posed any threat nor exhibited any threatening behavior toward the officers as they entered the room.

29. At the time the officers entered the room, no circumstances existed which

could have given the officers reason to suspect that the Plaintiff Zimmer was armed or dangerous.

30. Without issuing any commands to surrender, Defendants Rockett and Fenoy immediately grabbed Zimmer's arms from either side.

31. Officer Hanks could have intervened and de-escalated the encounter but instead chose to assist Defendants Rockett and Fenoy in perpetrating acts of physical violence against Plaintiff Zimmer.

32. Between 3:23:02 and 3:23:18 p.m., the Officers jointly and forcefully grabbed Plaintiff Zimmer and smashed his face into the ground.

33. Officer Fenoy attempted to dislocate Plaintiff Zimmer's left arm by making a forward thrusting movement while holding Plaintiff Zimmer's left arm from behind.

34. At 3:23:21 p.m., Officer Fenoy threatened, "Chill out, or I will break your fucking arm," despite Zimmer's visible confusion and lack of aggression.

35. After Plaintiff Zimmer was fully handcuffed, Officer Fenoy continued with both knees on Plaintiff Zimmer's back.

36. Moments later, at 3:23:36 p.m., while Zimmer was restrained face-down on the ground, Officer Fenoy repeated, "I will break your arm," with both knees still on Plaintiff Zimmer's back while holding Plaintiff Zimmer's right wrist.

37. Plaintiff Zimmer's left arm tremored uncontrollably as a result of his traumatic brain injury.

38. The officers interpreted Plaintiff Zimmer's tremor as a sign of resistance and escalated their violence in response.

39. Officer Hanks used her legs and assisted in holding Plaintiff Zimmer's legs together. At no point did she intervene or question the level of force being applied by Fenoy or Rockett.

40. Officer Rockett told Officer Fenoy to get his knee off Plaintiff Zimmer and to lean him up, while Plaintiff Zimmer asked what he was being arrested for.

41. Once Zimmer was finally pulled upright, Officer Rockett told him, "Chris, we did this because you fought the police before, and you just did it again," falsely portraying Zimmer's neurological symptoms and involuntary muscle spasms as aggression to justify the violence inflicted upon him.

42. Mr. Hancock, a workplace supervisor present at the scene, informed Officer Rockett that Zimmer had visible tremors in his left arm, a known symptom of Zimmer's traumatic brain injury.

43. Officer Rockett informed him that he had a warrant out of Williamson County, Tennessee.

44. At 3:24:44 p.m., Rockett told Zimmer, "The reason why they sent us is because you've been known to be violent, and that's why there are three of us, and that's why we bombarded you."

45. Officer Rockett told Plaintiff Zimmer that he tensed up and that is why he got taken down. Plaintiff Zimmer informed him that he had a traumatic brain injury and that his nerves were affected by the injury.

46. Plaintiff Zimmer continued to complain of pain in his right arm and shoulder, noting that someone had been twisting his arm in a manner that caused

significant injury.

47. Zimmer later confirmed to investigators that it was Officer Fenoy who had violently twisted his arm.

48. At 3:30:47 pm., Plaintiff Zimmer asked if his handcuffs could be moved to the front.

49. He remained restrained in handcuffs behind his back until approximately 3:34 p.m.

50. Officer Rockett adjusted the cuffs to the front of Zimmer's body, almost ten minutes after being told of his physical limitations and visible discomfort.

51. At 3:36:10 p.m., Zimmer again expressed that the situation was "ridiculous."

52. Rockett responded, "It was because you were flagged in the system as being violent," relying entirely on a system designation rather than real-time behavior to justify the use of violent tactics. However, Officer Fenoy later admitted during an internal investigation that Plaintiff Zimmer's mental disorder was a primary basis for the officers' violent conduct.

53. At 3:36:45 p.m., Zimmer stated, "Whoever was twisting my right arm, it fucked my right arm up."

54. Officer Rockett identified Fenoy as the one who had handled that side of Zimmer's body.

55. At 3:39:35 p.m., Rockett asked Zimmer if he was in pain. Zimmer reported pain in his elbow but declined to request medical attention at that moment.

56. At 3:56:51 p.m., Rockett told Zimmer, "[W]e had to surprise attack you."

57. Following the incident, Zimmer continued to suffer pain in his right elbow and shoulder, symptoms he directly attributed to the violent twisting and pressure applied by Officer Fenoy while he was pinned face-down on the ground.

58. Zimmer advised that he later observed bruising on his bicep, shoulder, and tricep, and that these injuries were documented by his mother and the Williamson County Sheriff's Department with photographs.

59. Zimmer also reported a rug burn on his face caused by Officer Fenoy's knee pressure against the back of his head during the takedown.

60. Plaintiff Zimmer suffered extreme pain and injuries as a result of the violent takedown tactics deployed by Officers Rockett, Fenoy, and Hanks.

61. During a formal interview on August 28, 2024, Zimmer reiterated that he had not resisted arrest and that his only movements were involuntary tremors caused by his neurological condition.

62. At no time did Officers Rockett, Fenoy, or Hanks inquire about Zimmer's medical history, attempt to de-escalate the encounter, or accommodate his known symptoms of traumatic brain injury and ataxia.

63. Officer Fenoy later admitted in an internal interview that he told Zimmer, "I will break your fucking arm," and that he used profanity, violence, and threats while Zimmer was already restrained and subdued.

64. Rockett and Fenoy's body-worn camera footage, as well as their own admissions, confirm that the officers never issued standard arrest instructions or verbal

warnings prior to using force, and that they made pre-arrest statements indicating their desire to hurt Zimmer.

65. The actions of Officers Rockett, Fenoy, and Hanks were willful, malicious, and executed with deliberate indifference to Zimmer's clearly visible disability, his constitutional rights, and his physical safety.

66. Following an internal investigation by the Murfreesboro Police Department's Office of Professional Responsibility (OPR), Deputy Chief Cary Gensemer issued a memorandum on October 14, 2024, concluding that all three responding officers had violated multiple department policies in connection with the June 26, 2024 arrest of Plaintiff Zimmer.

67. Specifically, the department found that Officer Fenoy violated:

   a. General Order No. 418 (Use of Force), sections (IV)(A)(1) and (2), for failing to use force in a reasonable and proportional manner;

   b. Section (IV)(A)(4), for failing to give Plaintiff Zimmer time to submit to arrest before using force, despite no exigency justifying immediate escalation;

   c. General Order No. 104 (Standards of Conduct), section (II)(A), for unprofessional and threatening conduct captured on body camera before and after the arrest, including repeated threats to "break" Plaintiff Zimmer's arm; and

   d. General Order No. 457 (Service of Warrants), section (II)(A), for executing the arrest without verifying that the warrant was valid.

68. Former Officer Joseph Rockett was also found to have violated:

   a. General Order No. 418, section (IV)(A)(4), for using force before giving Plaintiff Zimmer a reasonable opportunity to comply;

   b. General Order No. 104, section (II)(A), for unprofessional conduct prior to the arrest, including recorded statements evidencing a predisposition to use violent force; and

   c. General Order No. 457, section (II)(A), for executing the arrest without verifying the warrant's validity.

69. Officer Georgialee Hanks was found to have violated:

   a. General Order No. 418, section (IV)(F)(3)(a)(2), for failing to notify a supervisor of the excessive force used by Officer Fenoy, despite directly observing the conduct; and

   b. General Order No. 457, section (II)(A), for similarly failing to verify the validity of the warrant prior to the arrest.

70. The Department concluded that none of the officers complied with their obligations under clearly established departmental protocols governing the use of force, warrant verification, or intervention in the face of unlawful conduct.

## MUNICIPAL LIABILITY ALLEGATIONS

71. Defendant City of Murfreesboro, through its Police Department, maintained official policies, customs, and practices that were the moving force behind the constitutional violations described herein. These include:

a. A pattern, practice, and custom of failing to train, supervise, and discipline officers regarding the constitutional limits of force in encounters involving individuals with known or suspected psychological or neurological disabilities, such as mental illness or traumatic brain injury.

b. The City knew or should have known that its officers routinely encountered individuals with disabilities, yet it failed to provide adequate training on de-escalation, disability recognition, and the appropriate use of force when such individuals display symptoms that may mimic resistance such as involuntary tremors.

c. The risk of constitutional violations arising from such failure to train was obvious and longstanding. Murfreesboro Police Department officers receive minimal instruction on identifying neurological or psychiatric conditions, and no operational guidance on how to modify arrest techniques in response to such conditions, despite widely available model policies and national standards recommending such accommodations.

d. The Department also maintained a policy, practice, and/or custom whereby "flags" transmitted by dispatch indicating mental health history or disability were used by officers as justification for preemptive violence.

e. These mental health or disability indicators were routinely treated as tactical red flags rather than as notices requiring caution, accommodation, or engagement with crisis intervention principles—resulting in a predictable outcome of excessive force against individuals with disabilities like Plaintiff Zimmer.

f. The City of Murfreesboro and its policymakers for the Murfreesboro Police Department were aware of the need for training and policies governing the communication and interpretation of disability information among the police department but consciously disregarded that need.

g. These policies, customs, and failures collectively demonstrate a deliberate indifference to the constitutional rights of individuals with physical and psychological disabilities, in violation of the Fourth and Fourteenth Amendments, and give rise to municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

h. The City of Murfreesboro's failure to implement appropriate training, supervision, and dispatch-related safeguards caused and foreseeably resulted in the excessive and unconstitutional use of force against Plaintiff Zimmer.

**DAMAGES**

72. As a direct and proximate result of the Defendants' conduct, Plaintiff Zimmer has suffered and continues to suffer the following injuries and losses:

- Physical pain and injury, including damage to his arm, shoulder, and head;

- Emotional distress and mental anguish;

- Post-traumatic stress disorder;

- Humiliation.

73. Plaintiff further seeks punitive damages against Defendants Fenoy, Rockett, and Hanks for their intentional and malicious misconduct, as well as for acting with deliberate indifference to Plaintiff Zimmer's constitutional rights.

### CLAIM I – EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT
### 42 U.S.C. § 1983
### (All Defendants)

74. Defendants Fenoy, Rockett, and Hanks, acting under color of state law, used excessive and unreasonable force against Plaintiff Zimmer during his arrest, despite his nonviolent and compliant behavior.

75. The force used was objectively unreasonable under the totality of the circumstances, which include:

   a. That Plaintiff Zimmer was charged with a misdemeanor probation violation;

   b. That Plaintiff Zimmer did not pose any immediate threat to the safety of the officers or others;

   c. That Plaintiff Zimmer was not actively resisting arrest or attempting to evade by flight.

76. Defendant Hanks, despite observing this use of force, failed to intervene,

in violation of her duty to stop unconstitutional conduct when she had a realistic opportunity to do so. Instead, she joined the officers and participated in their use of excessive force against Plaintiff Zimmer.

77. The City of Murfreesboro is liable for the constitutional violations inflicted by Defendants Fenoy, Rockett, and Hanks because its policies, practices, and customs described *supra* were the moving force behind the constitutional violations.

### CLAIM II – UNLAWFUL COUNT II: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12132 et seq.
### (Against Defendant City of Murfreesboro Only)

82. Paragraphs 1 through 81 above are incorporated as if fully restated herein.

83. Plaintiff Christopher Zimmer is a qualified individual with a disability within the meaning of 42 U.S.C. § 12102(1). Due to his traumatic brain injury, Plaintiff Zimmer suffers from permanent neurological impairments, including involuntary tremors, limited motor control, and cognitive symptoms affecting communication, impulse regulation, and judgment. These symptoms substantially limit one or more major life activities, including reaching, lifting, speaking, communicating, and interacting with others. Additionally, these symptoms impair the major bodily functions of Plaintiff Zimmer's brain and musculoskeletal system.

84. In the alternative, the Defendant Officers regarded Plaintiff Zimmer as having a disability within the meaning of 42 U.S.C. § 12102(1).

85. Pursuant to 42 U.S.C. § 12132, "Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

86. The Murfreesboro Police Department is a program or activity of Defendant City of Murfreesboro, a public entity subject to Title II of the Americans with Disabilities Act.

87. Title II imposes an affirmative obligation upon public entities to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to avoid discrimination on the basis of disability.

88. At the time of the events described herein, Plaintiff Zimmer was subjected to unjustified physical violence by officers of the Murfreesboro Police Department based on his disability.

89. Rather than making any reasonable accommodations for people with disabilities like Plaintiff Zimmer, the Defendant City of Murfreesboro maintained a policy, practice, or custom of treating mental health indicators as threats warranting violent escalation.

90. At the beginning of the arrest encounter, Officers Rockett, Fenoy, and Hanks applied immediate physical violence against Plaintiff Zimmer based on his mental disability.

91. Officers Rockett, Fenoy, and Hanks, in response to Plaintiff Zimmer's physical symptoms (tremors) that were involuntary and directly related to Plaintiff

Zimmer's disability, further escalated their acts of physical violence against him during the arrest.

92. The City failed to train its officers in disability awareness, mental health intervention, and de-escalation tactics, resulting in unnecessary and discriminatory uses of force against individuals with disabilities like Plaintiff Zimmer.

93. These failures reflect deliberate indifference to the known and obvious risks faced by disabled individuals subject to law enforcement action, in violation of the ADA's reasonable accommodation mandate.

94. Plaintiff Zimmer was thereby excluded from the benefits of a safe and lawful arrest process and was instead subjected to excessive force, verbal abuse, and humiliation by reason of his disability.

95. The Defendant City's failure to adopt policies ensuring that "flags" communicated by dispatch related to disability trigger accommodations, rather than violence.

96. But for the Defendant City of Murfreesboro's failure to accommodate Plaintiff Zimmer's known neurological and psychological disabilities, and but for its discriminatory use-of-force practices, Plaintiff Zimmer would not have suffered the injuries and trauma alleged herein.

97. The City's actions and omissions described above constitute intentional discrimination under 42 U.S.C. § 12132, entitling Plaintiff Zimmer to compensatory damages, attorney's fees, and all other relief available under law.

## REQUEST FOR RELIEF

Based upon all of the foregoing, Plaintiff Christopher Zimmer requests:

**I.** That process be issued and that each Defendant be required to answer or otherwise respond within the time provided by the Federal Rules of Civil Procedure

**II.** A jury be empaneled to try this case;

**III.** That Plaintiff Zimmer be awarded nominal damages;

**IV.** That Plaintiff Zimmer be awarded compensatory damages;

**V.** That Plaintiff Zimmer be awarded punitive damages against Defendants Fenoy, Rockett, and Hanks in an amount to be determined by a jury for their intentional violations of his federally protected constitutional rights;

**VI.** That Plaintiff Zimmer be awarded reasonable attorney's fees, costs, and expenses under 42 U.S.C. § 1988;

**VII.** For pre- and post-judgment interest on all damages awarded;

**VIII.** For such other, further, and general relief as the Court deems just and appropriate.

Respectfully submitted,

*s/ Wesley Ben Clark*
Wesley Ben Clark, #32611
Frank Ross Brazil #34586
Paul D Randolph #39667
BRAZIL CLARK, PLLC
760 E Argyle Ave.
Nashville, TN 37203
615-730-8619
615-634-3651 (fax)
wesley@brazilclark.com
frank@brazilclark.com
paul@brazilclark.com